We are now recording. Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Liam C. Brennan presiding. Your Honors, the first case on the docket this morning is 2-21-0785, iMotorsports, Inc. plaintiff Matt Belene, arguing on behalf of the appellant, Mr. William A. Castle, Jr., arguing on behalf of Matt Belene, Mr. David Hale. Mr. Castle, if you are ready to proceed, you may do so. Thank you. Good morning, Your Honors. If it please the Court, the franchise agreement between the parties did not expire because of unlawful failure to provide iMotorsports with a mandatory notice under the Motor Vehicle Franchise Act of its intent to not renew or extend their franchise agreement upon its expiration and specifying the good cause for its refusal. This failure deprived iMotorsports of its statutory redress to duly file a protest with the Motor Vehicle Review Board contesting the validity of Vanderhall's good cause. Mr. Castle, if I could ask you a special question. Are you saying that under the Franchise Act, a franchise agreement can never expire as of its own terms? Notice has to be given under all circumstances? Is that your position? Yes, Your Honor, and certainly under these circumstances, that the mandate is explicit in the statute. I think that the qualifier here, Your Honor, might be where the manufacturer intends for it to expire. That must be noticed to the dealer. That is what the statute provides for. Mr. Castle, I'm sorry, Justice Hutchins. Under Illinois law, would you agree, and this is a basic contract law, that provisions placed in a contract for the benefit of a party may be waived by indicating that strict compliance with those provisions will not be required? Here, you agree the original contract expired, correct? No, I do not agree that the original contract expired, Your Honor. Well, what does expiration, what does expire mean? Well, to expire means to terminate. However, under the Act at issue, certain steps are required in order for a dealer to terminate or cancel, or to fail to renew or extend, or to substantially modify a franchise agreement. The exclusive market area under Section 2 of the Act, for the relevant, what about the 10-mile market area in Section 2? Well, Your Honor, there is that 10-mile prohibition, which the legislature enacted to protect dealers and consumers and the public interest against certain franchise practices by manufacturers. That is a 10-mile prohibition against manufacturers licensing franchisees within that zone. There's nothing that says that the parties cannot contract to a broader protection, only that the manufacturer cannot license franchisees within that 10-mile zone. Isn't Clark Investments versus Airstream directly on point? No, it is not. Why not? In Clark, Your Honor, the third franchise agreement at issue and entered into the parties had no geographic restriction in that franchise agreement. The dealer in that case was attempting to enforce a 90-mile area from a previous franchise agreement, which although had expired, what is important here is that the Section 46 of the Act and the notice whether or not the manufacturer complied with the notice requirements was not at issue. No one was challenging that. No one was stating that no one was arguing that the expiration was ineffective due to the failure to provide the mandatory notice under the Act. Indeed, the parties, I think in that case, That assumes, does it not, that the area or exclusive territory right is a substantial provision of the contract? You assume that that's a substantial provision of the contract, correct? It was a key term which induced iMotorsports to enter into the franchise agreement, but if the court's using the term substantial as it's used in the Act, then no, I would disagree. Well, the Act says a substantial part of the sales and service obligations or capital requirements, etc. There's nothing in that provision that discusses the Yes, that is correct. There's nothing in the provision that says that if they're going to change the territory, that notice must be given. Only that this section of the Act deals with sales and service obligations, capital requirements, etc. Did it in any way, did Vanderhall in any way violate those provisions? No, Your Honor. They violated the provision requiring it to give notice that it intended to fail or refuse to extend the franchise agreement upon its expiration. But both parties continued to perform. Exactly. Therefore, under the Act, it was presumed that the agreement did not expire because the Act would have required Vanderhall to provide that mandatory notice, and the parties continued to perform under the same. Picking up on that last point, doesn't that sort of undercut your argument? Because the parties continued on as they had before, operating essentially in accordance with the earlier agreement, where was the cancellation termination fair to extend? The relationship continued on as did before, didn't it? The relationship continued on, and our position is that the agreement did not expire. That's why it continued on as it did. It did not expire because it is not allowed to expire unless the mandatory notice provisions are given to the dealer. So that's your position. We talked about that earlier, saying that under all circumstances, the dealer has to give or the franchisor has to give some notice irrespective of the contract provisions. Correct? Is that what you're saying? I don't know if I would say all, Your Honor. I would say what the statute says, that it is a violation for the manufacturer to cancel or terminate the franchise agreement without good cause and without good notice as provided, or to fail or refuse to extend the franchise agreement or selling agreement of a dealer upon its expiration, which is the case here. What constitutes a failure to extend the agreement or a refusal to extend? What did the defendants do here that constitute a failure refusal to extend? They're arguing that upon its expiration, that it did not extend. It failed to extend the franchise agreement. That is the Applebee's position, that they did not extend it. In other words, they failed to extend it upon its expiration, which is precisely what the statute addressed. But you're the plaintiff in this case. And to Justice Hudson's question, what is it that you're pointing to that says they failed to extend or continue the franchise contract? What did they do? Well, I think that we're talking about demonstrating a negative. We know they didn't fail to extend. We know that they... Well, they continue to provide the product, right? You continue to sell the product. The only change, if you will, is this failure to continue to abide by the geographic restriction. I mean, everything else has remained the same. Is that correct? That is correct, Your Honor. And I think that the point here is that Vanderhall did not take the position... They are looking to go back now and say, oh, it expired. We let this expire. We failed to extend or renew it. That's Vanderhall's position. And we're saying, no, that cannot have occurred as a matter of law because of the geographic restriction. And we're saying, no, that cannot have occurred as a matter of law. I take it you have no case still that you can direct us to on the fact that the agreement just can't expire of its own terms. I mean, you're reading that as a statutory requirement, but you have no cases that touch on this issue, do you? No, Your Honor. I think this may be a novel point of law here, but we do not. But certainly, this mandate has been upheld and echoed by the Supreme Court in the Crossroads decision, which makes clear that this notice is absolutely mandatory. Go ahead. Finish your thought. And I think that one needs to think through the consequences of what occurs if that mandatory obligation is not complied with by the manufacturer. One of the things you're troubled by, obviously, is the exclusivity provision regarding the competition. And you have a fallback position, as I understand it, that an implied contract has been created by the conduct of the parties. Is that correct? Yes, that is. But in the alternative, it's count two, Your Honor. Well, to have an implied contract, there has to be some meeting of the minds between the parties as to the terms. Is that correct? Yes, that is correct. Okay. So what evidence is there a meeting of the minds regarding the continuation of the 75-mile exclusivity provision? Where is there any evidence that they agreed to that? The evidence that, Your Honor, is that the parties continued to perform in exactly the same manner that they had prior to the date of expiration set forth in the franchise agreement. They continued to perform all of their affirmative duties in exactly the same manner. The parties were both aware that the exclusivity aspect of their agreement to perform was a key factor in inducing iMotorsports to enter into that agreement. Therefore, to say that because there is no conduct that Vanderhall could have committed, that would prove that it was assenting to a negative duty to not do so. The reason we know that the contract continued in force under the theory of implied contract is because the affirmative duties and obligations continue to be performed in exactly the same manner and that the parties were both aware that the exclusivity provision had been negotiated for and was a key factor in inducing iMotorsports to enter into the franchise agreement as implied specifically in the amended complaint. So it's your position under the implied contract theory, all of the terms of the original agreement were automatically carried over into the implied contract. Is that what you're saying? Well, your honor, I think that in this case, I would certainly say that at least the exclusivity provision is because it was a key term which induced iMotorsports to enter into the agreement. Okay. And can you acknowledge that the 10-mile was by statute? So the 16-mile modification was still beyond the statutory minimum, correct? It was beyond the statutory minimum that set forth in the act which prohibits dealers from in an exclusive area and which again is something which is the absolute minimum designed to protect dealers and the public. Nothing suggests about that statute or that 10-mile minimum that the parties cannot contract for a broader protection to the dealer and the public. Mr. Kessler, did you ever look at the legislative history of this particular act? Just a little bit, your honor. I'm not sure exactly to what aspect, but I think- I asked the question because it appears your position is, and this is an overarching issue in the case, is that the contract, the franchisee agreement could never expire as of its own terms. It could never expire. There has to be some affirmative action taken by the defendant, correct? Well, again, your honor, under the specific circumstances set forth in the act, that is true. So what's the underlying legislative reason or rationale for that? Why would this be different than any other type of contract? Well, it is different and that is why there is a specific act legislated or enacted by the legislature to govern and protect dealers and the public interest. You are absolutely correct, your honor. This is an exceptional area of law where contracts are regulated in this way. And these special affirmative duties are placed upon the manufacturers for the benefit of the public welfare and for the dealers. As the Supreme Court stated in General Motors versus the Review Board, the act is designed to the negative impact of aggressive franchising practices by automobile manufacturers who desire to establish excessive competing franchises, which are considered to be a potential threat to the public welfare. Mr. Castle, we're going to give you the opportunity to- I'm sorry, Justice Burkett, did you have a follow-up question? Just very quickly, how did the behavior substantially change the sales and service obligations or capital requirements of motorsports? How? Your honor, we have not alleged, I think that as the act speaks to that- doesn't the act require, in order to enforce the contract for lack of notice, it requires that there be a substantial change or modification of sales and service obligations. Respectfully, your honor, no, that is not correct. It is that the manufacturer may not cancel or terminate or fail to renew or extend upon expiration or three, make a substantial- or three, to offer a renewal replacement for succeeding franchise containing terms and provisions which substantially change or modify the sales and service obligations or capital requirements. You'll see they're arguing that the specific mandate to fail or refuse, which in this case they did fail, to extend the franchise agreement upon its expiration, which is separated off by semi-colons, as a specific incidence where a mandatory notice is required. Mr. Castle, you have an opportunity for rebuttal. Thank you very much. Thank you, your honor. And is it Mr. Pail? Yes, Justice Brennan, Mr. Pail. All right, Mr. Pail, you may proceed. Thank you, your honors, and may it please the court. Your honor, Vanderhulst admits that this is a simple and straightforward case. As your honors have noted, the parties did enter into a fixed-term agreement that expired by its own terms on October 31st, 2019. The expiration clause was a material provision of the agreement that was freely bargained for and entered into by iMotorsports and Vanderhulst. Mr. Pail, may I just inquire? Doesn't every franchise agreement have an expiration date? I mean, isn't the point of the Motor Vehicle Franchise Act to regulate expirations in certain types of agreements generally? I mean, in this case, there was a provision, I believe it's Section 9-4 of the contract, that said the contract will terminate on October 31st, 2019. It didn't require any conditions, precedent, or any other actions for that to occur. Well, wouldn't the Motor Vehicle Franchise Act trump an interpretation of your particular agreement if it didn't incorporate the requirements that otherwise govern under the act? I don't think so, your honor. And again, I think here is where, as Justice Burkett noted, the Clark Investments case is very illuminating, and I would argue it's on point. In that case, the parties, like here, were subject to an agreement that defined an exclusive territory, and the agreement expired by its own terms. After that agreement expired, the parties operated for some time without a contract. The dealer continued to sell the franchisor's products, and the franchisor provided the dealer with the same support that it had under the expired contract. And as relevant here, the contract in Clark provided for an exclusive territory only until the agreement's terminus date, and the court held in that case that the dealer could not reenact the expired agreements and the attendant exclusive territorial restrictions. So basically, the court in Clark Investments rejected the same maneuver that iMotor Sports is attempting in this case. Contrary to iMotor Sports, and I think this is backed up by Clark Investments, franchise agreements can and do expire by their own terms, and the court has an obligation to enforce those contracts as written. Vanderhall would submit that the principle espousing Clark Investments holds true here. iMotor Sports can't reenact an agreement that expired years after its expiration. Even if the court accepts the allegation that the parties continued to do business after October 31st, 2019, that would not change the simple fact that the parties never entered into a new agreement that extended the 75-mile territorial restriction beyond October 31st, 2019. So, if I could ask a question. Under Section 4D6 of the Act, notice is required if the manufacturer intends to cancel or terminate the franchise agreement, which I don't think the defendants are being accused of in this case, but it goes on to say intends not to extend or renew. Why does that intends not to extend or renew language apply here? Did the defendants intend to renew or extend? Your Honor, I think that this is a simple case where the contract said what it said. We did not refuse to extend. We did not, it's Vanderhall's position, we did not fail to extend. It's just the contract said what it said. It said that it will expire by its own terms, which is something that the parties could have freely bargained for. Certainly, they could freely bargain for that, but I think the plaintiff's argument is that a notice is still required so the rug is not yanked out from under the franchisee. That seems to be his very subtle point. Yes, any contract can terminate at some point, but is a notice required before it can terminate? I would say, Your Honor, that no, a notice is not required, was not required under the circumstance where the contract says that it will terminate on a date certain. And the reason for that is that, I guess just to think about it conceptually here, what would really be the benefit of doing some kind of reminder notice 60 days before a contract is due to terminate when the parties already have sufficient notice on the plain terms of the what's going on here, Your Honors, respectfully to Mr. Castle's position, this is really a section 4D6 violation dressed up as a breach of contract clause. Now, they're alleging there was a violation of section 4D6 of the Motor Vehicle Franchise Act. Maybe that's the case of what they're alleging, but that's not what they pleaded in their complaint. They're alleging a breach of contract, and their theory is that because we didn't give the notice, that rendered termination provision unenforceable by its own terms. I believe we discussed during Mr. Castle's argument, there is no case in Illinois where they have held that an expiration provision in a motor vehicle franchise agreement can be held unenforceable just because there's no notice given prior to the expiration date. If Meijer Motorsports wanted to take issue with what happened here, Vanderhall respectively submits that the path to do that would have been to file an administrative proceeding with the Motor Vehicle Review Board, as they would be able to do under section 12 of the Franchise Act. But they didn't do that, Your Honor, and under the Crossroads case of the Illinois Supreme Court, circuit courts lack jurisdiction to adjudicate violations under section 4D6 of the Motor Vehicle Franchise Act. So I think what is really going on here is perhaps a bit of sour grapes on the part of IMotorsports. They're claiming that there was a lack of compliance with section 4D6 of the statute. Vanderhall's position is that that was not, the notice was not necessary, because again, nothing prevents a contract from terminating on its own terms. But even if they did have some qualms with what occurred here, the proper course would have been to take it up with the Motor Vehicle Review Board, which again, they decided not to do. Ultimately, they decided to bring a breach of contract action on a contract that had expired by its own terms. And as the circuit court said in its decision, you know, really, what is going on here is that the parties bargained for two provisions that weren't addressed in the Motor Vehicle Franchise Act. There was the time period that the agreement would expire. And there was also the fact that there's the 75 mile exclusivity provision. Again, not aware of any case, and I'm sure that the other side would have cited them in this case exist, saying that the parties to a franchise act cannot do something like that, Your Honor. And just the simple fact that they continue to do business after October 31, 2019, does not mean that the 75 mile provision automatically extended. I think that by arguing that a termination clause that the fact that there was not notice given is an untenable position that's not supported by any Illinois case. The fact that the parties continued to do business under the same terms and conditions that had occurred prior to the quote unquote expiration of the franchise agreements. Does that suggest an implied contract to continue doing business together? No, I do not think it does, Your Honor. And I think what the other side is trying to do here is basically a little bit of gap filling. The standard for an implied contract is the same as a standard for a written contract under Illinois law. There has to be offer acceptance consideration. And again, I think there's an abundance of case law suggesting an implied contract where a contract expires, but the parties continue doing business along the exact same lines. There's no shortage of case law suggesting that allows you to fill in the contract terms that we expect. Isn't that so? Well, Your Honor, I think what's different about this case is that the main point of contention between the parties is a 75 mile. No, but before we get to the term of the contract, if you will, would you agree that there's a lot of case law saying that if there's a contract that expires and the parties continue operating exactly as they had before the expiration of the contract, that's a boilerplate example of an implied contract? I know there are cases, Your Honor, of course, that say that facts and circumstances can lead to an inference of an implied contract. But if you look at the face of the complaints before the court, I would say that allegations substantiated in an implied contract have not been alleged here. In paragraph 40 of the first amended complaint, I.M. Motorsports argues that the parties have continued to recognize validity and enforceability of and operate under the express and in term the express and implied terms of the party's franchise agreement, including the territorial restriction contained in Section 2 F. Your Honor, Vanderhall submits that those are mere legal conclusions devoid of any factual support. The First Amendment complaint does not allege any facts indicating that Vanderhall agreed to a 75 mile exclusive territorial restriction in perpetuity. It doesn't allege that we even discussed a provision like that, much less agreed to it. And the mere fact that the parties continue to do business after the written contract expired in October of 2019 brings I.M. Motorsports no closer to establishing an implied contract. There's simply no additional allegations aside from the fact that they're trying to say the express contract basically continued through no other fact than that the parties continue to to do business. But even if they continue to do business, it doesn't mean they continue to do business on the condition that the 75 mile exclusive restriction would remain in place. If anything, Vanderhall submits that I.M. Motorsports has pleaded itself out of such an allegation because look what happened here. A little more than a year after the contract expired, Vanderhall opened a dealer at Hickory Hills, which was 16 miles away from the Elmhurst location. That indicates that there was not an implied contract, in fact, continuing the 75 mile restriction. And just one other point I want to touch on here. It may it may indicate that or it may indicate a breach of a term of the implied contract. I mean, doesn't that. Well, but your honor, again, I would say that, look, an implied contract, basically what they would have to allege here is that there was a new implied contract that came into existence after the express contract expired. And the complaint is devoid of any allegations that would allow this court to reasonably infer that that was the case. Again, I think we we touched on the fact that there's nothing in the Motor Vehicle Franchise Act that says anything about a 75 mile restriction as the statute defines the relevant market area under Section 2Q of the statute for a dealer that's located in DuPage County, which the circuit court took judicial judicial notice of the fact that it has a population of greater than 300,000 for a dealership in DuPage County. That would encompass a radius of 10 miles. And of course, we opened a dealership 16 miles away. So again, I don't think that any kind of continued territorial restriction, be it 15 miles, 20 miles or 75 miles can be reasonably inferred from the party's actions here. And I guess just to kind of go back briefly, your honor, you know, I would also say that the implied contract theory set forth by iMotorsports here really has no limiting principle. I mean, their argument and implied contract, in fact, would be found anytime two commercial actors continue to do business following expiration of a written contract, even in the absence of any facts specifically alleging that the parties intended to keep every single provision of a contract in place. And this is another place where I think the reasoning of the circuit court is helpful to Vanderpoel here. Judge Wheaton, in her oral decision, stated that the contract expired by its own terms and that the 75-mile limitation was not a substantial change to the contract. So I think really what you're hearing from iMotorsports here more than anything is that they believe that just because there was a 75-mile territorial restriction in the written contract that expired by its own terms, they are entitled, that's the only provision that they really care about, to keep going past the termination date. And we just don't believe the case law, Your Honor, or the logic of this dispute backs up that argument. I do want to say a few things while we still have time about the Section 4B claim under the Motor Vehicle Franchise Act. As Vanderpoel has argued here today, Your Honor, and as we argued in the lower court, there's been no breach here. There was no breach of a contract that had expired. There was no contract that was formed. And the only actions upon which iMotorsports predicates Exception 4B claim is a breach of contract, which is not going to be enough. Even if the court were to assume hypothetically that there was a breach of the territorial restriction more than a year after the contract expired, that would not mean that Vanderpoel acted without honesty or not in the state of claim under Section 4B. And that's because in Illinois, a simple breach of contract, while of course not condoned, is not considered wanton or tortious so as to provide sufficient facts for a violation of Section 4B of the Motor Vehicle Franchise Act. And I would also submit that none of the cases that iMotorsports cites in its briefing says otherwise. In their reply, they cite the Northwestern Dental School case, the Aurora University case, which of course occurred in the educational context. And while a student may have a remedy for breach of contract when an adverse decision concerning a student was made arbitrarily, capriciously, or in bad faith, that principle has never been held to apply to commercial actors in the motor vehicle franchise space. They also cite a case, Levy State Farm, that concerned a separate action under the Illinois Commercial Code, which again is not on point with our facts here. So at the end of the day, if you look at the briefing, counsel does not cite a single case where an Illinois court has recognized a Section 4B claim stemming from your breach of a franchise agreement. And Justice, since I see that my time is up, just briefly to close, Vander Hall submits that the Circuit Court correctly dismissed the First Amendment complaint with prejudice and this court should affirm that ruling. Thank you. Justice Hudson or Justice Burkett, do you have any additional questions? No, no. Thank you. All right. Mr. Pail, thank you. Mr. Castle, rebuttal. You're muted, Mr. Castle. I'm sorry, Your Honors. Yes, this is a novel area of law, and therefore it was appropriate that this court take up this appeal and hear this oral argument. While there is not a host of case law on point, nor is there any case law on point in support of the Vander Hall's position. I would reiterate, Clark is clearly distinguishable from this case and is not on point. At issue there, the third franchise agreement was the agreement which the court found controlled. It had no geographic restriction in that agreement. The court further found, as the dealer attempted to fall back on an earlier agreement, that even if the court were to have found that the third franchise agreement were void for some reason, that the previous agreement that did have a geographic restriction was no longer in force because there had been no violation of section 46, because the manufacturer offered a replacement agreement. The court specifies here we do have a violation of 46. There was no offer of a replacement agreement. There was no notice of the intent to not renew or extend upon the franchise agreements. Let me ask this question. Hypothetically, what if Vander Hall had provided notice that they intended to open a franchise after the expiration of the agreement? They had provided notice that they intended to open a franchise in Hickory Hills. What could you have done? What could iMotorsports have done to stop them? File the same lawsuit. Where is it going? It's a breach of the contract. Why is it a breach? Because the notice mandated by the act when a manufacturer... Hypothetically, they give the notice. What could you do to stop them from opening a franchise 16 miles away? Well, the notice that if a manufacturer's notice to a dealer that they're one of the events that require notice under the act, and it has nothing to do, therefore, with the enforceability of the franchise agreement. Therefore, their remedy would be to file a breach of a contract claim as in this action. Mr. Castle, let me ask you this. Even if we were to conclude that a contractual relationship could be implied from the conduct of the parties after the expiration of the original agreement, there does not appear to be any allegations in your amended complaint regarding the exclusivity provision other than the conclusory argument there was a meeting of the minds to extend the 75-mile exclusivity provision beyond the expiration date of the agreement. What evidence is there of any meeting of the minds on that specific issue? Well, Your Honor, I think that the... As I noted before, the evidence are the allegations that they continue to perform under all of the positive affirmative duties under the agreement. The only way it would seem that a party that it would be indicated that someone agreed to not consent to a negative duty, that that would become known as if they violated. But the point is they didn't do that. Vanderhall did not do that. And then when they did, iMotorsports made a demand to cease and desist. Well, they complied with the product. They complied with the warranty work. There were meetings of the minds. Aren't you on the exclusivity provision? There's no evidence of any discussions or communications about that provision after the agreement expired. Was there any documentation to that effect? That is not alleged, Your Honor. No, only that they continue to perform under all the same positive duties set forth in the agreement and that the parties were... And that this was a key term which induced iMotorsports to enter and exit the agreement. Your Honors, I think it's... Can I follow up on Justice Burkett's question? Vanderhall could have given notice 60 days prior to the expiration date that they were not going to I presume you wouldn't argue that the implied contract is necessarily of indefinite duration. There still must be a mechanism by which Vanderhall could terminate the implied contract or seek to modify the terms of the implied contract. Would that be a fair statement? Yes, certainly. I think the parties would be able to terminate the contract as they would prior to the expiration date set forth in the franchise agreement. So to your point earlier, the modification of the geographical... the geographic issue is not something that would be a termination, if you will. So why couldn't Vanderhall simply say, you know what, iMotorsports, as of today's date, we're no longer honoring that 75-mile restriction. We're in an implied contract range, if you will. And from this point forward, we're no longer mutually agreeing to that aspect of the implied contract. That would be fine as long as they complied with the 46 requirement that they gave notice that they were not going to renew or extend. But they're agreeing to extend. They're just not agreeing to that one particular term. Yes, I think that that might be permissible because that's not notice to refuse to extend. And if that's permissible, it wouldn't be the basis of a breach of contract, would it, in this implied contract context? So if we're in the realm of an implied contract, and you still have to have a meeting of the minds, and Vanderhall says, you know what, we no longer agree to this 75-mile prohibition. We think it should be something less. They're entitled to do that, right? Well, in compliance with the requirements of the act, that if they, let's see here. And we're talking about- They're not terminating. They're merely, they're not refusing to extend. They're merely saying, we're altering this one term. Could they do that? They could, because that does not fall under one of the categories of the requirements for notice under 4D6. But that's not what occurred here. And that's not the position being taken by the appellee. Their position is that it expired. That was what the ruling of the trial court was based upon. And where there is an expiration, it is mandatory that the 60-day notice be provided, setting forth a specific basis for its good cause, and notifying the dealer of their right to file a protest with the Motor Vehicle Review Board. Mr. Castle, your time is up. Let me just ask my colleagues. Justice Burkett or Justice Hudson, do you have any additional questions? Just very quickly, no one has discussed this, but the area restriction, the 75-mile radius restriction, was written in, right? Was typed in, because it appears from the contract, it was an add-on for the specific benefit of iMotorsports, correct? That is correct. That, I think, evidence is that it was a key term to induce iMotorsports. Oh, so iMotorsports knew it was written in there for their specific benefit, different from other franchisees, correct? I think that that can be inferred, yes, that this was a key term sought by iMotorsports. That's all. Thank you. I have no further questions. I'll thank Mr. Castle and Mr. Pail for your arguments. The arguments are concluded, and an opinion will be rendered in due course. Thank you very much. Thank you, Your Honors. Have a nice day. Thank you.